LEHIGH VALLEY RAILROAD COMPANY, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS ET AL., DEFENDANTS.

Decided May 17, 1927.

**Grade Crossings—Under Track Passageway the Entire Sixty-six Feet of a State Highway in Line With the Lines of the Highway Directed by the Utility Commissioners—Railroad Asked That There be Allowed a Curve of Not More Than Six Degrees at Any One Point—Held, That Highway Lines Should be Straight and That the Passageway Should be the Entire Width of the Highway to Admit of Sidewalk.**

On application to Mr. Justice Parker, at chambers, for allowance of writ of *certiorari* with a stay to review order of the board of public utility commissioners requiring the railroad company to substitute for the present grade crossing an underpass on state highway No. 16, at Royce Valley station, in the county of Somerset.

For the prosecutor, *Hobart & Minard.*

For the board, *John O. Bigelow.*

For the county of Somerset, *Clarence E. Case.*

For the state highway commission, *Fred W. De Voe.*

Memorandum by

PARKER, J. The importance of the matter calls for a speedy decision, especially as the allowance of a writ would accomplish little or nothing unless a stay be superadded, the writ, by statute, not carrying a stay *ex proprio vigoro* in

these cases; and on the other hand, if a stay were allowed, an important public work already delayed too long, would be further postponed.

The grade crossing at Royce Valley is one with which I am familiar, having passed it many times on state highway No. 16. It is a dangerous crossing on an important road, which all parties agree should be eliminated. State highway No. 16 leads from Somerville to Princeton, and the work of widening it to an uniform width of sixty-six feet is in progress. The railroad crosses it at an acute angle of twenty-nine degrees thirty minutes. Both railroad and highway are straight for some distance, the highway over three thousand feet south of the railroad, and about two thousand feet to the north of it. Any underpass means a more or less deep cut. The principal question in dispute before the board was whether this underpass and its incidental cut should be kept straight, and on the line of the present road, or, in order to cross under the railroad more nearly at right angles than at present, the highway (as one goes north from Princeton) should be deflected to the right or eastward, then to the left, crossing under the railroad at an angle of some fifty-four degrees, as I recollect it, then again to the left or westward, and finally to the right, joining the existing road north of the railroad. This would carry the highway to the east of the present station by a double-reverse curve of not over six degrees at any point. The board rejected this plan offered by the railroad, and as it appears to me with entire propriety. It is asserted in the affidavits that a six-degree curve is a perfectly safe curve. Very likely it is, where the road is on a level and the visibility is unimpaired; but between the walls of a cut, any curve is objectionable and usually dangerous. No recipe has yet been found for preventing the careless motorist, and all too many of them are careless, from hugging the inside of a curve, in whatever direction he may be going. The requirement of a straight road at such a place as this is essentially sound, and to turn a great state road at such a place from a straight line to a crooked one would be to court constant disaster. The view of the board on this point meets with my entire

concurrence. The expense may be somewhat greater than by the railroad plan, but as noted by the board, the railroad figures omit important items which would go far toward equalizing matters.

This seems to be the crux of the application. I have no doubt whatever about the jurisdiction of the board. It is not claimed, I think, that it was challenged at the hearing. As to the alleged unreasonableness of requiring an underpass sixty-six feet wide, there are at least two answers. One is that this is the settled future width of the road, to which it is actually being worked. The other is that the railroad's own plan called for this same width, merely at a less acute angle. Nothing is to be gained, and much is to be lost, by choking traffic at such a place. This is a permanent improvement, and an eye to the future requires that it be adequate to reasonably anticipated future needs. On the same theory the provision of space for sidewalks is justified. The rights of foot passengers on state roads have been too long overlooked, and they are receiving attention none too soon.

As to the Camp Lane phase of the matter, it is mainly incidental. Camp Lane appears to be a minor road, crossing the railroad at grade some one thousand two hundred feet eastward of the highway No. 16 crossing. The order requires the closing of Camp Lane crossing and the diversion of that road south of the railroad so as to join highway No. 16. This is quite within the jurisdiction of the board, and similar action has been taken by that body more than once. I see nothing vulnerable in this part of the case.

It may be well to add that it was stated on the argument that this underpass is to have a double use, for a new state highway is projected from Lambertville to a point on No. 16 south of the railroad, then following No. 16 to a point north of the railroad, and then diverging eastward toward Bound Brook. Such a situation, of course, emphasizes the need for ample room under the railroad.

I conclude that *allocatur* of a writ should be denied, without prejudice, of course, to an application to the court *in banc.*